# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

James H. Hayes,

      Petitioner

v.

William Hutchings, et al.,

      Respondents

Case No. 2:21-cv-02267-APG-DJA

**Order Denying Petition for Writ of Habeas Corpus and Denying a Certificate of Appealability**

[ECF No. 22]

      James H. Hayes entered an *Alford*[1] plea in Nevada to attempt grand larceny and was sentenced as a habitual criminal to 60 to 174 months imprisonment. ECF No. 49-24.  In this court, he filed a First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. 22.  In that petition, he alleges he is innocent of the habitual criminal sentence; his plea was not voluntary, knowing, and intelligent; and he received ineffective assistance of trial and appellate counsel regarding the habitual criminal adjudication and sentence, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  I deny the petition.

## I.    BACKGROUND

      I summarize the trial evidence and related state court record material and proceedings as a backdrop to consideration of the issues presented in this case.[2]

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) (holding a defendant can enter a valid guilty plea while still maintaining innocence if there is a factual basis for the plea and the plea is voluntary, knowing, and intelligent).

[2] I make no credibility or factual findings regarding the truth or falsity of evidence or statements of fact in the state court record.  I summarize them only as background to the issues presented in this case, and I do not summarize all such material.  No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me.  My

### A.      Excalibur Case

On April 9, 2013, Hayes entered an occupied hotel room at the Excalibur Hotel and Casino in Las Vegas, Nevada, and riffled through the occupants' luggage. ECF No. 46-27 at 6–11.  He attempted to flee when an occupant awoke and noticed him. *Id.* at 7, 13.  The occupant stopped Hayes and took pictures of Hayes's identification before letting him go and calling security. *Id.* at 13–20.  The State filed a complaint charging Hayes with burglary and attempt grand larceny, and a warrant issued for his arrest. ECF Nos. 46-4 at 2; 46-5.

### B.      Harrah's Case

Three years later, in 2016, hotel security investigators at Harrah's Hotel and Casino in Las Vegas placed surveillance cameras, and money and valuable items as bait, inside a hotel room, leaving the room door ajar. ECF No. 47-8 at 17–21.  Hotel security surveilled Hayes push open the door, enter the room, survey items inside, and steal $350 in bait money from a wallet planted inside the room. *Id.* at 20–24.  Hayes had the bait money when the investigators detained him. *Id.* at 24–25.

### C.      Plea to attempt grand larceny for Excalibur Case

In 2016, a preliminary hearing was held for the Excalibur case; the State struck the attempt grand larceny charge, and the Justice Court held Hayes to answer to the burglary charge. ECF Nos. 46-25 at 3; 46-27 at 34, 37.  Hayes pleaded not guilty. ECF No. 46-30 at 3.

The State filed a notice of intent to seek punishment as a habitual criminal under NRS § 207.010 alleging three prior felony convictions: (1) a 2007 Texas conviction for credit card abuse (2007 Texas conviction); (2) a 2011 Nevada conviction for attempt possession of credit or

---

failure to mention a specific piece of evidence or category of evidence does not signify that I overlooked it in considering Hayes's claims.

1   debit card without cardholder's consent (2011 Nevada conviction); and (3) a 2007 Texas

2   conviction for fraudulent use/possession of personal identification information (Texas fraud

3   conviction). ECF No. 47-3 at 2–3. After Hayes was convicted of the Harrah's burglary, the State

4   filed in the Excalibur case an amended notice of intent to seek a habitual criminal punishment

5   based on: (1) the 2007 Texas conviction;[3] (2) the 2011 Nevada conviction; and (3) the 2017

6   burglary conviction in the Harrah's case (2017 Nevada conviction). ECF Nos. 26-4 at 7–8; 47-14

7   at 3; 48-3 at 2–3.

8          In 2018, the parties filed in the Excalibur case an executed guilty plea agreement (GPA).

9   ECF No. 49-16 at 3.  Hayes agreed to enter an *Alford* plea to attempt grand larceny as set forth in

10  the amended information. ECF No. 49-15 at 2, 9–10.

11         By signing the GPA, Hayes acknowledged he was not promised or guaranteed any

12  sentence by anyone, and his sentence was to be determined by the state district court within the

13  limits prescribed by statute. *Id.* at 4.  Hayes agreed the state court "may elect to treat this offense

14  as a felony or a gross misdemeanor," and he could be imprisoned for one to four years if the

15  sentencing court elected to treat the offense as a felony. *Id.* at 3.  The State "agreed to make no

16  recommendation at the time of sentencing," and give "no opposition to probation with the only

17  condition being thirty (30) days in the Clark County Detention Center (CCDC), with thirty (30)

18  days credit for time served." *Id.* at 2.  Hayes also agreed to what the state courts referred to as an

19  "FTA clause" which allowed, among other things, the State to argue for imposition of a habitual

20

21

22  [3]According to the records of the Texas courts, Hayes used a credit card belonging to Dean Alac
    to purchase jewelry from a business operating out of Las Vegas and used a Texas driver's license
    belonging to Percy Vital to assume Vital's identity and accept the jewelry when it was delivered

23  to a hotel in Texas.  This resulted in Hayes's 2007 Texas conviction and Texas fraud conviction.
    *See* ECF No. 23-2 at 43–44 (Texas Court of Appeals's affirmance order finding sufficiency of
    the evidence for the convictions).

criminal sentence should an "independent magistrate, by affidavit review," confirm "probable cause" against Hayes for "new criminal charges":

> I understand and agree that, if . . . an independent magistrate, by affidavit review, confirms probable cause against me for new criminal charges including reckless driving or DUI, but excluding minor traffic violations, the State will have the unqualified right to argue for any legal sentence and term of confinement allowable for the crime(s) to which I am pleading guilty, including the use of any prior convictions I may have to increase my sentence as a habitual criminal to five (5) to twenty (20) years, Life without the possibility of parole, Life with the possibility of parole after ten (10) years, or a definite twenty-five (25) year term with the possibility of parole after ten (10) years.
>
> Otherwise, I am entitled to receive the benefits of these negotiations as stated in this plea agreement.

*Id.* at 3.

In the GPA, Hayes confirmed that he:

(1) discussed with his attorney the elements of all of the original charges against him and he understood the nature of the charges;

(2) he discussed with his attorney any possible defenses, defense strategies and circumstances which might be in his favor;

(3) all of the elements, consequences, rights, and waiver of rights have been thoroughly explained to him by his attorney;

(4) he was signing the agreement voluntarily, after consultation with his attorney;

(5) he was not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in the agreement;

(6) he was not under the influence of any intoxicating liquor, controlled substance, or other drug which would in any manner impair his ability to comprehend or understand his agreement or the proceedings surrounding his entry of plea; and

4

1    (7) his attorney answered all his questions regarding the GPA and its consequences to his

2    satisfaction and he was satisfied with the services provided by his attorney.

3    *Id.* at 6–7.

4        At the change-of-plea hearing, Hayes informed the state district court that (1) trial

5    counsel answered his questions regarding the GPA; (2) he had no additional questions for

6    counsel or the court; and (3) he understood the information and read and signed the GPA. ECF

7    No. 49-16 at 3–5.  When asked whether he pleaded guilty to attempt grand larceny based upon

8    the facts in the amended information, Hayes responded, "Guilty by way of *Alford*." *Id.* at 6.  The

9    State detailed facts it was prepared to prove beyond a reasonable doubt at a trial, and Hayes's

10   counsel accepted that recitation. *Id.* at 7–8.

11       Hayes understood he faced punishment of "one to four in the Nevada Department of

12   Corrections" "or a gross misdemeanor of 364 days." *Id.* at 5.  Hayes did not admit guilt and

13   believed the plea was in his best interest to avoid facing a trial for a higher offense and potential

14   harsher sentence. *Id.* at 7–9.  The state district court found Hayes's plea was free and voluntary

15   and Hayes understood the nature and consequences of his plea. *Id.*  The state district court

16   declined the defense request to immediately sentence Hayes, because the State requested, and the

17   court desired, to first obtain a presentence investigation report (PSR). *Id.* at 9–10.

18       **D.    Mirage Case**

19       Before Hayes was sentenced for the Excalibur case, he was charged with burglary for

20   entering a hotel room with the intent to commit larceny at the Mirage Hotel & Casino in Las

21   Vegas, Nevada. ECF Nos. 26-2 at 2; 49-21 to 9–21.  A state Justice Court conducted a 72-hour

22   probable cause affidavit-review and found probable cause to believe Hayes committed burglary.

23   ECF No. 49-21 at 20.

### E.     Sentencing in Excalibur Case

The State gave notice to the defense in a motion to revoke bail in the Excalibur case, that the State believed that it had regained the right to argue for a habitual criminal sentence because a magistrate found probable cause, based on a 72-hour hearing, to believe Hayes committed burglary in the Mirage case. ECF No. 49-21 at 5–7. The PSR for the Excalibur case asserted Hayes had the four prior felony convictions that the State alleged in the previously filed initial and amended habitual criminal notices, and recommended a sentence of 72-to-174 months if Hayes was adjudicated a small habitual criminal. ECF No. 64-1 at 4–5, 8.

At the sentencing hearing, the State reiterated that, under the GPA, it had regained the right to argue for a habitual criminal sentence because of the magistrate's finding of probable cause for the new "door-push burglary" and "unlawful possession of a hotel room key" charges in the Mirage case. ECF No. 49-23 at 7. Defense counsel confirmed Hayes was "bound over" at the preliminary hearing in the Mirage case. *Id.* at 13. The sentencing court agreed the GPA entitled the State to argue for a sentence as a habitual criminal. *Id.* at 18. The State presented certified judgments of conviction for four convictions alleged in the initial and amended notices of intent to seek a habitual criminal punishment. ECF Nos. 26-4 at 2–15.

Hayes confirmed he read the PSR and did not need additional time to do so. ECF No. 49-23 at 4. The sentencing court asked Hayes whether the PSR contained errors and Hayes replied that his Texas convictions could not be used to adjudicate him a habitual criminal because they were not felonies under Texas or Nevada law as they did not impose prison sentences, and the 2017 Nevada conviction could not be used because it postdates the offense in the Excalibur case:

> THE COURT: All right. Is there anything in the report that you
> think is incorrect?
> THE DEFENDANT: Yes.
> THE COURT: And what is that?

THE DEFENDANT: They have crimes on here that occurred after the date of this crime from 2013; that was the date of this crime. They have 2016 crimes. And then the crimes in Texas, they don't—they have them here as a felony, but they don't carry any prison time, mandatory supervision, nor parole. They're in Texas, what they call a state jail crime which is what you have here as a gross misdemeanor, where it doesn't carry any prison time, mandatory supervision, not parole.

THE COURT: Okay. So you're saying convicted of fraudulent use or possession of identifying information in Texas is a gross misdemeanor?

THE DEFENDANT: Is a state jail crime—

THE COURT: So—but it's not—

THE DEFENDANT: —where it doesn't carry any—

THE COURT: Not a felony.

THE DEFENDANT: No, it doesn't carry any prison time.

THE COURT: So you go—because you go to jail for two years, you understand anything over a year is considered a felony—

THE DEFENDANT: Yeah, but it was—

THE COURT: —because the United States Supreme Court has said that. Any—

THE DEFENDANT: Yeah, but it was two cases; they both was a year a piece. It was the credit card—

THE COURT: I see one count.

THE DEFENDANT: The credit card abuse and the fraudulent use or possession was one case.

THE COURT: Okay. So you got two years for one count and two years for the second count. Two different case numbers, 1083785 and 1083786. Two different cases it says.

THE DEFENDANT: Yeah, I went to trial on it, and it was just one conviction.

THE COURT: Okay. Well what I have in front of me is three judgment of convictions. I have a judgment of conviction from the case that's in Harris County, Texas, in Case Number 1083786. And the—it went to jury trial.

[THE STATE]: I've got this one too.

THE COURT: And—

[THE STATE]: I also have one more, Your Honor. I apologize.

THE COURT: For fraudulent use or possession of identifying information.

I have another one from February 16th, 2012, it's C270308 and it is a charge of attempt possession of credit or debit card without owner's consent; felony conviction here in the state of Nevada.

Another conviction in the state of Nevada for March 13th, 2017, in C315125 for burglary.

1    THE DEFENDANT:  And that was after the date of this crime,
     Your Honor.
2    THE COURT:  Yeah.  No, I see that.  Let's see when the crime
     was committed though.  Let's see.  Okay.
3    . . . .
     Okay.  The other one is 1083785.  It's a felony conviction out of
4    the state of Texas for credit or debit card abuse.  So three of them
     that they provided, it's Exhibits 1, 2, and 4 are all convictions that
5    happened prior to this pointed event.  And then the fourth one they
     provided me is a conviction that happened March 13th, 2017, for a
6    2016 event; correct?
     THE STATE:  Correct, Your Honor.
7    THE COURT:  [M]r. Hayes, anything else with regards to the Pre-
     Sentence Investigation Report?
8    THE DEFENDANT:  No, not at this time.  No.

9    *Id.* at 4–7.  After hearing argument, the sentencing court concluded, "Mr. Hayes, I do believe that

10   the State has satisfied any obligations statutorily under 207.010 to support their claim for

11   habitual treatment," and informed Hayes, "you are going to be treated as a—under the small

12   habitual 207.010(a)." *Id.* at 19.  The state court sentenced Hayes to, among other things, 60-to-

13   174 months imprisonment, consecutive to the sentence in the Harrah's case. ECF Nos. 49-23 at

14   19–20; 49-24.

15   Hayes's direct appeal and state postconviction relief efforts, including postconviction

16   petitions, and motions to modify and/or correct an illegal sentence and to withdraw the plea,

17   were unsuccessful. ECF Nos. 50-19, 52-9; 55-12; 55-25; 58-13; 59-2; 59-14; 60-4; 60-19.  After

18   filing his federal petition, the Supreme Court of Nevada rejected an additional motion to modify

19   and/or correct an illegal sentence in the state district court. ECF Nos. 62-6; 75-2.

20   **II.    LEGAL STANDARDS**

21   **A.    Review under the Antiterrorism and Effective Death Penalty Act**

22   The Antiterrorism and Effective Death Penalty Act (AEDPA sets forth the standard of

23   review generally applicable in habeas corpus cases:

8

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent within the meaning of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409–10).

A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt"). To obtain habeas relief, a prisoner must show that the state court's ruling on the claim presented was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### B.    Standards for Evaluating Ineffective Assistance of Counsel (IAC)

An IAC claim requires a petitioner demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

A petitioner who makes an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. A court considering an IAC claim, "must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. Thus, when considering IAC claims, a court is obliged to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. "In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

In establishing there is a reasonable probability the result of the trial would have been different, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *Cullen*, 563 U.S. at 189. A petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The burden

11

1  is on the petitioner to overcome the presumption that counsel made sound trial-strategy

2  decisions. *See Harrington*, 562 U.S. at 104.

3      Where a state district court previously adjudicated an IAC claim under *Strickland*,

4  establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S.

5  at 104–05.  In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each

6  highly deferential, and when the two apply in tandem, review is doubly so. *See id.  See also*

7  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state

8  court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential

9  standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

10  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The

11  question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

12  deferential standard." *Harrington*, 562 U.S. at 105.

13  **III.    DISCUSSION[4]**

14      **A.    Ground 1—Actual Innocence of Habitual Criminal Adjudication**

15      Hayes alleges he is innocent of the habitual criminal adjudication because the State failed

16  to establish he was previously convicted of two crimes "which under the laws of the situs of the

17  crime or of [Nevada] would amount to a felony," in violation of NRS § 207.010(a). ECF No. 22

18  at 11–15.  He claims that his standalone or freestanding claim of actual innocence is not subject

19  to AEDPA deferential review.  He claims the state court's determination that he had the requisite

20  two prior convictions is an unreasonable determination of fact.  The respondents contend that

21

22

23

---

[4] I have considered all the parties' arguments and cited authorities.  Failure to mention a specific
argument or authority does not signify that I overlooked it.

even assuming the claim is cognizable, Hayes is not innocent of habitual criminal adjudication

because it is supported by two prior valid felony convictions. ECF No. 90 at 7–14.

### 1.    Standards for Evaluating Standalone Actual Innocence Claim

Neither the Supreme Court nor the Ninth Circuit has determined whether a standalone

claim of actual innocence is cognizable on federal habeas review; however, each has assumed,

without deciding, such a claim is viable.[5]  In *Herrera v. Collins*, the Supreme Court stated that

"[c]laims of actual innocence based on newly discovered evidence have never been held to state

a ground for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding." 506 U.S. 390, 400 (1993) (citing *Townsend v. Sain*, 372

U.S. 293, 317 (1963)).  The Court explained that "[t]his rule is grounded in the principle that

federal habeas courts sit to ensure that individuals are not imprisoned in violation of the

Constitution—not to correct errors of fact." *Id.* (citing *Moore v. Dempsey*, 261 U.S. 86, 87–88

(1923)) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or

guilt but solely the question whether their constitutional rights have been preserved . . . .").  The

Supreme Court explained "[w]e may assume, for the sake of argument in deciding this case, that

---

[5] *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (explaining "[w]hether [a federal constitutional right to be released upon proof of actual innocence] exists is an open question.  We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); *House v. Bell*, 547 U.S. 518, 555 (2006) (declining to resolve whether freestanding-innocence claims are possible and concluding that while the petitioner cast sufficient doubt on his guilt to satisfy [the *Schlup v. Delo*, 513 U.S. 298 (1995)] gateway standard for obtaining federal review despite a state procedural default, he failed to meet "[w]hatever burden a hypothetical freestanding innocence claim would require"); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (explaining, "[w]e have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable.").

in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. 390.  The Court went on to say that "[t]he threshold showing for such an assumed right would necessarily be extraordinarily high," and the showing in that case fell short of any such threshold. *Id.*

Notwithstanding the Supreme Court's statements that it has not decided whether a freestanding innocence claim may be raised in a federal habeas corpus proceeding, the Ninth Circuit has concluded that, "the threshold for a freestanding claim of innocence would have to be 'extraordinarily high,' " and that it "contemplates a stronger showing than insufficiency of the evidence to convict" or "doubt about his guilt." *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (internal citations omitted).  The Ninth Circuit explained that the required showing would "have to be at least as high as the more demanding standard articulated by Justice Blackmun in his *Herrera* dissent," in which he stated, "that to be entitled to relief, a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id.* at 476 (citing *Herrera*, 506 U.S. at 442–44 (Blackmun, J., dissenting)).  The Ninth Circuit concluded in *Carriger* that, "[i]n light of the presumption of guilt that attaches after a constitutionally valid conviction, 'it is fair to place on [a petitioner asserting a *Herrera* claim] the burden of proving his innocence, not just raising doubt about his guilt.'" *Id.* at 477 (quoting *Herrera*, 506 U.S. at 443 (Blackmun, J., dissenting)).

The Supreme Court has, even in the context of a *Schlup* gateway claim of actual innocence raised to overcome a procedural default (as distinct from a standalone actual innocence claim), "recognized the difficulty of translating the concept of 'actual' innocence from

the guilt phase to the sentencing phase of a capital trial." *See Dugger v. Adams*, 489 U.S. 401,

410 n.6 (1989) (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986) and declining to "undertake

here to define what it means to be 'actually innocent' of a death sentence."). *See also Dretke v.*

*Haley*, 541 U.S. 386, 393 (2004) (declining to decide whether to "extend the actual innocence

exception to procedural default of constitutional claims challenging noncapital sentencing

error.").

## 2.    State Law Standards for Habitual Criminal Adjudication

At the relevant time, the Nevada habitual criminal statute stated:

> 1.    Unless the person is prosecuted pursuant to NRS 207.012 or
> 207.014, a person convicted in this State of:
>
> (a) Any felony, who has previously
> been two times convicted,
> whether in this State or
> elsewhere, of any crime which
> under the laws of the situs of the
> crime or of this State would
> amount to a felony is a habitual
> criminal and shall be punished
> for a category B felony by
> imprisonment in the state prison
> for a minimum term of not less
> than 5 years and a maximum
> term of not more than 20 years.

NRS § 207.010(1)(a), *as amended by* Laws 2009, c. 156 § 1.  "All prior convictions used to

enhance a sentence must have preceded the primary offense." *Brown v. State*, 97 Nev. 101, 102,

624 P.2d 1005, 1006 (1981).  "[W]here two or more convictions grow out of the same act,

transaction or occurrence, and are prosecuted in the same indictment or information, those

several convictions may be utilized only as a single 'prior conviction' for purposes of applying

the habitual criminal statute." *Rezin v. State*, 95 Nev. 461, 462, 596 P.2d 226, 227 (1979).

1

### 3.    State Court Determination

2    Hayes did not raise a standalone claim of actual innocence when he appealed his

3 conviction. ECF Nos. 50-19; 52-9.  However, I previously ruled the claim is exhausted because

4 the gravamen of the "actual innocence" claim is that Hayes lacked the requisite two prior felony

5 convictions to qualify for habitual criminal status, and the Nevada Court of Appeals (NCA)

6 considered and rejected it when it affirmed the denial of one of Hayes's motions to modify

7 and/or correct illegal sentence:[6]

8            In his motion, Hayes first claimed the sentencing court's
       decision to adjudicate him a small habitual criminal was based on
9       mistaken assumptions about his criminal record.  Hayes claimed he
       lacked the requisite number of prior felony convictions to qualify
10      for habitual criminal treatment, because he had only one prior
       felony conviction at the time he was adjudicated and not the three
11      the State claimed.  "[A] motion to modify a sentence is limited in
       scope to sentences based on mistaken assumptions about a
12      defendant's criminal record which work to the defendant's extreme
       detriment." *Edwards v. State,* 112 Nev. 704, 708, 918 P.2d 321,
13      324 (1996).

14           [H]ayes claimed he lacked the requisite number of prior
       felony convictions because one of the offenses the State relied
15      upon—a 2007 Texas conviction for credit card abuse—was
       nonviolent and would not be a felony in Nevada.  A prior offense
16      may be used to adjudicate a person as a habitual criminal so long
       as the offense would amount to a felony "under the laws of the
17      situs of the crime or of this State." NRS 207.010(1)(a).  "NRS
       207.010 makes no special allowance for non-violent crimes or for
18      the remoteness of convictions; instead, these are considerations
       within the discretion of the district court." *Arajakis v. State,* 108
19      Nev. 976, 983, 843 P.2d 800, 805 (1992).  Credit card abuse is a
       felony under Texas law, *see* Tex. Penal Code Ann. § 32.21(d) [sic]
20      (West 2005), and it was within the sentencing court's discretion to
       consider this prior felony conviction despite it being nonviolent.
21      Hayes thus failed to demonstrate that the sentencing court's
       reliance on this conviction amounted to a mistaken assumption
22      about his criminal record.  Therefore, we conclude this district
       court did not err by denying this claim.

23

---

[6] ECF No. 82 at 5.

[H]ayes claimed he lacked the requisite number of prior felony convictions because one of the offenses the State relied upon—a 2017 burglary conviction—was entered after the commission of the primary offense. "All prior convictions used to enhance a sentence must have preceded the primary offense." *Brown v. State,* 97 Nev. 101, 102, 624 P.2d 1005, 1006 (1981). Because Hayes committed the instant offense in 2013, the 2017 burglary conviction could not be used to adjudicate him a habitual criminal.

However, at the time Hayes committed his crimes, anyone who was convicted of a felony and had two prior felony convictions qualified for habitual criminal treatment. *See* 2009 Nev. Stat., ch. 156, § 1, at 567. In addition to the Texas conviction discussed above, the State also provided evidence that Hayes had a 2011 felony conviction for attempted possession of a credit or debit card without the cardholder's consent. Because Hayes had two other prior felony convictions, he failed to demonstrate that he lacked the requisite number of felony convictions to qualify for habitual criminal treatment. Hayes thus failed to demonstrate any mistaken assumptions about his criminal record worked to his extreme detriment.

Therefore, we conclude this district court did not err by denying this claim.

ECF No. 60-19 at 2–4.

### 4.    Analysis of Ground 1

Because the United States Supreme Court has never recognized, absent showing an independent constitutional violation, a freestanding claim of actual innocence of a non-capital sentence imposed by a state court, the NCA's denial of an actual innocence claim with respect to Hayes's noncapital sentencing decision cannot be contrary to, or an unreasonable application of, clearly established Supreme Court authority.[7] *See McQuiggin*, 569 U.S. at 392.

---

[7] Hayes contends six justices—Justices O'Connor, Kennedy, and White in their concurring opinions in *Herrera*, and Justices Blackmun, Stevens, and Souter in their dissenting opinions in

1    Applying deferential review,[8] I am bound by the state court's determinations that, as a

2  matter of state law, Hayes's 2007 Texas conviction and 2011 Nevada conviction qualify as

3  felonies for habitual criminal treatment under NRS § 207.010. *See Bradshaw v. Richey*, 546 U.S.

4  74, 76 (2005) ("[a] state court's interpretation of state law . . . binds a federal court sitting in

5  habeas corpus.").

6    If I, alternatively, apply *de novo* review, I am bound to "defer to a state court's factual

7  findings under § 2254(e)." *See Stevens v. Davis*, 25 F.4th 1141, 1165–66 (9th Cir. 2022) (quoting

8  *Crittenden v. Chappell*, 804 F.3d 998, 1011 (9th Cir. 2015)).  "Specifically, the state court's

9  factual findings are presumed correct, and that presumption can be overcome only by clear and

10

11

12  that case—agreed the federal constitution provides a claim for relief to those who can prove they
are innocent with newly discovered evidence in a capital case. ECF No. 94 at 12.  "Clearly

13  established Federal law" for purposes of § 2254(d)(1), includes only "the holdings, as opposed to
the dicta, of [the Supreme Court]'s decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014)

14  (citing *Howes v. Fields*, 565 U.S. 499, 505 (2012) and quoting *Williams*, 529 U.S. at 412
(internal quotation marks omitted)).  It is true that, "[w]hen a fragmented [Supreme] Court

15  decides a case and no single rationale explaining the result enjoys the assent of five Justices, the
holding of the Court may be viewed as that position taken by those Members who concurred in

16  the judgments on the narrowest grounds. . . ." *Marks v. United States*, 430 U.S. 188, 193 (1977)
(quotation marks omitted).  However, the majority decision in *Herrera* enjoyed the assent of five

17  Justices, thus, it is not clear that resort to concurring opinions to identify the clearly established
law in *Herrera* is warranted.

18    Hayes additionally argues the Supreme Court implicitly recognized a freestanding claim
of innocence in *In re Davis*, in which the Supreme Court transferred a habeas petition in a capital

19  case, that was directly filed in the Supreme Court under its original jurisdiction, to the United
States District Court for factfinding "whether evidence that could not have been obtained at the

20  time of trial clearly establishes petitioner's innocence." 557 U.S. 952, 952 (2009).  After *Davis*,
however, the Supreme Court confirmed in 2013 that it has "not resolved whether a prisoner may

21  be entitled to habeas relief based on a freestanding claim of actual innocence" *McQuiggin*, 569
U.S. at 392.

22  [8] Hayes's contention that his free-standing actual innocence claim is not subject to AEDPA
deference is unsupported in his case as I have determined the gravamen of his actual innocence

23  claim was considered and rejected by the state courts. *See* ECF Nos. 82 at 5; 94 at 11–12. *See
also e.g., Jimenez v. Stanford*, 96 F.4th 164, 183–84 & n.21, 194–98 (2nd Cir. 2024) (finding
AEDPA deference applies to an assumed free-standing innocence claim).

convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).  Here, the NCA's determination of fact that the 2007 Texas conviction and 2011 Nevada conviction are felonies for purposes of habitual criminal treatment is objectively reasonable and is not belied by clear and convincing evidence as the certified judgments of conviction state those convictions are felonies. ECF No. 26-4 at 3, 10. *See also* NRS § 207.016(5) ("For the purposes of  NRS 207.010 . . . a certified copy of a felony conviction is prima facie evidence of conviction of a prior felony.").

Finally, assuming arguendo that I may apply *de novo* review to the claim in its entirety without giving any deference to the state court's determinations, I would, like the state court, conclude this claim wholly lacks merit. *See e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (stating, "[c]ourts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, *see* § 2254(a).").

First, as stated above, the certified copies of the judgments state that the 2007 Texas conviction and the 2011 Nevada conviction are felonies.  Although the 2011 Nevada conviction is a category E felony unless designated a gross misdemeanor, the judgment of conviction states the conviction was designated a felony. ECF No. 26-4 at 10.  Thus, the 2011 Nevada conviction was a qualifying prior felony for purposes of Nevada's habitual criminal statute.

Second, the 2007 Texas conviction corresponds to a felony conviction under Nevada law. Texas penalized Hayes for credit card abuse, a state jail felony, which, among other things, requires that an individual "with intent to obtain a benefit fraudulently" "presents or uses a credit card or debit card with knowledge that . . . the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder." Tex. Penal Code § 32.31

(b)(1)(A).  "Credit card" means "an identification card, plate, coupon, book, number, or any other device authorizing a designated person or bearer to obtain property or services on credit," and "includes the number or description of the device if the device itself is not produced at the time of ordering or obtaining the property or service." Tex. Penal Code § 32.31(a)(2); § 32.31(d). Similarly, in Nevada it is a felony for any person who, with the intent to defraud, "[u]ses the number or other identifying physical or electronic description of a credit account, customarily evidenced by a credit card or the number or other identifying physical or electronic description of a debit card, to obtain money, goods, property, services or anything of value without the consent of the cardholder." NRS § 205.690(2); § 205.760(1)(b).  Thus, the 2007 Texas conviction for credit card abuse qualified as a felony under Nevada law for purposes of Nevada's habitual criminal statute.  Moreover, the Texas appellate record for the 2007 Texas conviction shows Hayes used without authorization a credit card belonging to another individual to purchase jewelry from a business operating out of Las Vegas. ECF No. 23-2 at 41–51. *See also supra* at p. 3 n.3.  Thus, even the facts underlying the 2007 Texas conviction would constitute a felony in Nevada for Fraudulent Use of a Credit Card or Identifying Description of Credit Account. *See* NRS § 205.690(2); § 205.760(1)(b).

Hayes contends his 2007 Texas conviction is not a felony under Nevada law because it is called a "state jail felony" in Texas and felonies in Nevada are punishable in the state prison for more than one year.  I do not find this argument persuasive given the above discussion and because, under Texas law, the 2007 Texas conviction is a felony; not, for instance, a gross misdemeanor, and is punishable for not less than 180 days nor more than two years. Texas Pen. Code § 12.04(a); § 12.35(a); § 32.31(d).  And Hayes was sentenced for the 2007 Texas conviction to two years in a state jail. ECF No. 23-4 at 51; 26-4 at 3.  Under Nevada law, a gross

misdemeanor carries a sentence of no more than 365 days in jail while a felony is a crime that carries more than one year of incarceration in a state prison. NRS §§ 193.130, 193.140.  Thus, the 2007 Texas conviction is a felony under both Texas and Nevada law.

Because the state sentencing court had evidence of two prior felony convictions that qualified under Nevada law for purposes of Nevada's habitual criminal statute, Hayes cannot prevail with his standalone claim of actual innocence of the habitual criminal sentence. Accordingly, Hayes is not entitled to federal habeas relief on Ground 1.

### B.      Ground 4(B)(1)—IAC—Advice about Habitual Criminal Sentence

Hayes alleges his *Alford* plea was not knowing, intelligent, and voluntary because trial counsel failed to advise him regarding the impact of his prior convictions and the applicability of Nevada's habitual criminal statute, and but for counsel's failure, Hayes would have gone to trial on the burglary charge. ECF No. 22 at 19–20, 23–25.  He furthermore contends the state district court failed to properly canvass him to ensure he understood the nature of the charges and the elements of the offenses, and had it done so, the state district court would have realized Hayes did not believe he was guilty, did not know he faced punishment as a habitual criminal, and did not know the punishment if he was adjudged a habitual criminal. *Id.*  The respondents contend Hayes is not entitled to federal habeas relief on either claim. ECF No. 90 at 14–21.

### 1.      Standards for Evaluating Knowing, Intelligent, and Voluntary Plea

The federal constitutional guarantee of due process requires a knowing, intelligent, and voluntary guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  The record must demonstrate the defendant understands he is waiving his privilege against self-incrimination, his right to jury trial, and his right to confront his accusers. *See Boykin*, 395 U.S. at 243.  A defendant must be aware of the nature and elements of

the charges against him, the constitutional rights he waives by pleading guilty, and possible

punishment. *See id*. at 242–43.  The validity of a "plea can be determined only by considering all

of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

The voluntariness of a plea is assessed under the following standard:

> [A] plea of guilty entered by one fully aware of the direct
> consequences, including the actual value of any commitments
> made to him by the court, prosecutor, or his own counsel, must
> stand unless induced by threats (or promises to discontinue
> improper harassment), misrepresentation (including unfulfilled or
> unfulfillable promises), or perhaps by promises that are by their
> nature improper as having no proper relationship to the
> prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755.  "[T]he representations of the defendant, his lawyer, and the prosecutor

[at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings" as "[s]olemn declarations in open

court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford*, 400 U.S. at 31).  Because

"a guilty plea operates as a waiver of important rights, and is valid only if done voluntarily,

knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely

consequences,' '[w]here a defendant pleads guilty to a crime without having been informed of

the crime's elements, this standard is not met and the plea is invalid.'" *Bradshaw v. Stumpf*, 545

U.S. 175, 183 (2005) (internal citation omitted).  "[T]he constitutional prerequisites of a valid

plea may be satisfied where the record accurately reflects that the nature of the charge and the

elements of the crime were explained to the defendant by his own, competent counsel." *Id.*  And

1    even where the record does not expressly show the trial judge or defense counsel explained the

2    elements of the charges to the defendant, there is a presumption that "defense counsel routinely

3    explain the nature of the offense in sufficient detail to give the accused notice of what he is being

4    asked to admit." *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976).

5         The Ninth Circuit has held that a "state trial court's failure to find a factual basis for [a

6    defendant's] no contest plea—unaccompanied by protestations of innocence—does not present a

7    constitutional issue cognizable under 28 U.S.C. § 2254." *Loftis v. Almager*, 704 F.3d 645, 648

8    (9th Cir. 2012) (recognizing "[w]hile *Alford* did not explicitly hold that a factual basis was

9    constitutionally necessary, lower federal courts have drawn from the above language the

10   requirement that if a defendant pleads guilty while claiming innocence the trial court must find a

11   factual basis."). *See also Alford*, 400 U.S. at 38 (stating, "[p]leas coupled with claims of

12   innocence should not be accepted unless there is a factual basis for the plea . . ." and recognizing

13   without holding that "because of the importance of protecting the innocent and of insuring that

14   guilty pleas are a product of free and intelligent choice, various state and federal court decisions

15   properly caution that pleas coupled with claims of innocence should not be accepted unless there

16   is a factual basis for the plea …," "and until the judge taking the plea has inquired into and

17   sought to resolve the conflict between the waiver of trial and the claim of innocence.") (internal

18   citations omitted).

19        For a plea to be knowing, intelligent, and voluntary, the defendant must also be advised

20   of the direct consequences of the plea. *See Brady*, 397 U.S. at 755.  A direct consequence has "a

21   definite, immediate and largely automatic effect on the range of the defendant's punishment[.]"

22   *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988).  "Before a court may accept a defendant's

23   guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result

from his plea." *Id.* at 235.  A defendant's misguided assessment of "every relevant factor

entering into his decision" does not mean that his guilty plea will "be vulnerable to attack" after

he enters it. *Brady*, 397 U.S. at 757.  A plea is not invalid merely because the defendant

"discovers long after the plea has been accepted that his calculus misapprehended the quality of

the State's case, or the likely penalties attached to alternative courses of action." *Id.*

When an IAC claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry

probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an

intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th

Cir. 2004).  "To succeed, the defendant must show that counsel's assistance was not within the

range of competence demanded of counsel in criminal cases." *Id.* at 979–80.  *See also McMann*

*v. Richardson*, 397 U.S. 759, 771 (1970).  The Supreme Court has noted that failure to examine

prior conviction documents where counsel knows the State will rely upon them can, depending

on the circumstances of the case, constitute deficient performance under *Strickland*.  *See*

*Rompilla v. Beard*, 545 U.S. 374, 389–90 (2005).  To establish prejudice, a petitioner "must

show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  *See also Lafler v.*

*Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome

of the plea process would have been different with competent advice.").

### 2.    State Court Determination

The NCA rejected Hayes's claim that his plea was not knowing and voluntary due to a

failure to advise him about potential consequences of a habitual criminal sentence.

> [H]ayes claimed counsel was ineffective for failing to
> ensure he fully understood the plea agreement and potential
> consequences he faced from entry of an *Alford* plea.  The written
> plea agreement, which Hayes acknowledged having read and

understood, informed Hayes of the potential sentences he faced by entry of his plea. The written plea agreement also informed Hayes of the potential sentences he faced due to the habitual criminal enhancement if he violated the failure-to-appear (FTA) clause. At the plea canvass, Hayes informed the trial-level court that he read the written plea agreement and his counsel was available to answer any of his questions concerning the agreement. At the canvass, Hayes also asserted he understood the plea agreement and believed entry of an *Alford* was in his best interests.

In light of the record concerning Hayes' understanding of the plea agreement and the consequences he faced from entry of his plea, Hayes failed to demonstrate his counsel's performance fell below an objective standard of reasonableness. Hayes also failed to demonstrate a reasonable probability he would have refused to enter an *Alford* plea and would have insisted on proceeding to trial had counsel done a more thorough job of explaining the plea agreement and potential consequences to him or discussed the plea agreement in a different manner. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 59-2 at 3–5.

The NCA also rejected Hayes's claim that the plea was not knowing and voluntary due to the state district court's failure to explain the consequences of violating the FTA clause:

"This Court will not invalidate a plea as long as the totality of the circumstances, as shown by the record, demonstrates that the plea was knowing and voluntarily made and that the defendant understood the nature of the offense and the consequences of the plea." *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000). As explained previously, the written plea agreement explained to Hayes the consequences he faced by violating the FTA clause and Hayes acknowledged that he read and understood the written plea agreement. Thus, the totality of the circumstances, demonstrated that Hayes understood the consequences he faced from entry of his plea and from violating the FTA clause. Therefore, we conclude that Hayes is not entitled to relief based upon this claim.

ECF No. 59-2 at 9.

/ / / /

### 3.  Analysis of Ground 4(B)(1)

The NCA's determinations are objectively reasonable as the record belies Hayes's claim that he was unaware that he was eligible for habitual criminal treatment punishment or the consequences of his violating the FTA clause.  Hayes and his attorneys were provided notices, well before the execution of the GPA and entry of plea, that the State intended to seek a habitual criminal sentence and of the prior felony convictions the State would rely upon to do so, including the 2007 Texas conviction and 2011 Nevada conviction. *See supra* at pp. 2–3.  Hayes agreed to the FTA clause, which states that if an "independent magistrate, by affidavit review," confirmed "probable cause" against him for "new criminal charges," the State would have an "unqualified right" to argue for any legal sentence, including, among other things, a sentence as a habitual criminal for five to 20 years imprisonment. *See supra* at p. 4.  In the GPA, Hayes confirmed the "consequences" of the GPA were thoroughly explained to him by his attorney, and his attorney answered all his questions regarding the GPA and its consequences to his satisfaction. *Id.* at 4–5.  At the change-of-plea hearing Hayes confirmed he read, understood, and signed the GPA, trial counsel answered his questions regarding the GPA, and he had no additional questions for counsel or the state court. *Id.*  Given the record, the NCA was objectively reasonable in its determinations that Hayes failed to demonstrate that his plea was not voluntary, knowing, and intelligent based on any failure of trial counsel or the state district court to explain the FTA clause or the consequences Hayes could face as a habitual criminal. *See Brady*, 397 U.S. at 755.

The record also belies Hayes's claim that, even assuming counsel was deficient in his advice about the consequences of the FTA clause and habitual criminal adjudication, there is a reasonable probability Hayes would have insisted on going to trial.  Without the State's promise

in the GPA, Hayes would have sat trial for burglary, which carried a potential sentence of one to ten years. Given the State's notices, if convicted, Hayes would have also faced the prospect of a habitual criminal adjudication of five to twenty years. *See* NRS § 205.060, *as amended by* Laws 2005, c. 126 § 1, eff. May 19, 2005. By contrast, under the terms of the GPA, so long as Hayes did not, among other things, acquire a new criminal case as set forth in the FTA clause, the State would suggest a sentence of time served and Hayes faced only one to four years imprisonment for the attempt grand larceny. Because Hayes faced a habitual criminal adjudication if convicted at trial, his confirmation at his plea canvass that his decision to forgo trial was based on his desire to avoid trial for the higher offense and potential harsher penalties supports the NCA's conclusion that there is no reasonable probability Hayes would have gone to trial rather than plead guilty but for the alleged failure of trial counsel and the state court to provide additional explanation of the FTA clause and potential habitual criminal sentence.

Hayes counters that he would have gone to trial because he had defenses to burglary. To establish prejudice under *Strickland*, the "[l]ikelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *Cullen*, 563 U.S. at 189. Hayes contends he could have defended the case by arguing the State failed to prove he was not invited into the Excalibur hotel room by one of the occupants. ECF No. 94 at 27–28. Consent to entry was not a defense to burglary if he "acquired the entry with felonious intent." Hayes did not establish he had consent to enter the room; rather, he fled when caught in the act of rummaging through the belongings of the occupants inside a hotel room that did not belong to him. And the circumstances surrounding his presence in the hotel room belie a claim that he was invited or lacked intent to steal. *See Barrett v. State,* 105 Nev. 361, 364, 775 P.2d 1276, 1277 (1989).

1    Hayes contends he could have defensed the burglary charge because the State could not

2 prove he intended to steal property with a value of $650 or more. ECF No. 94 at 28–29.  *See*

3 *Servin v. State,* 117 Nev. 775, 789, 32 P.3d 1277, 1287 (2001) (stating the offense of burglary

4 requires proof that a defendant entered a building with the intent to commit grand or petit

5 larceny); NRS § 205.220(1)(a), *as amended by* Laws 2011, c. 41, § 13 (a person commits grand

6 larceny if the person intentionally steals, takes and carries away, leads away or drives away

7 personal goods or property, with a value of $650 or more, owned by another person).  The

8 attempt grand larceny charge that Hayes pleaded to alleged Hayes intended to steal money, an

9 iPhone, and other items.  Hayes has presented nothing showing the State could not in all

10 reasonable probability establish its allegation that he entered the room with intent to take or steal

11 personal goods or property with a value of $650 or more.[9]  Thus, it was reasonable for the NCA

12 to conclude Hayes fails to establish a reasonable probability Hayes would have opted to go to

13 trial under the circumstances even if counsel or the state district court had provided additional

14 explanations about the FTA clause and habitual criminal sentence.

15    The NCA's determinations that Hayes failed to establish, based on the performance of

16 trial counsel or the state district court, that his plea was not knowing and voluntary, is neither

17 contrary to nor constitutes an unreasonable application of clearly established federal law as

18 determined by the Supreme Court and is not based on an unreasonable determination of the facts

19 considering the evidence presented during the state court proceedings.  Ground 4(B)(1) is denied.

20 / / / /

21

---

22 [9] Circumstantial evidence may be used to establish guilt and is "intrinsically no different from testimonial evidence" because, although "circumstantial evidence may in some cases point to a

23 wholly incorrect result," this is "equally true of testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954) (rejecting contention that circumstantial evidence must exclude every hypothesis but guilt).

C.    **Ground 5—IAC—Investigate Prior Convictions and Withdraw Plea**

Hayes alleges trial counsel was ineffective for failing to (A) investigate Hayes's criminal record and challenge habitual criminal adjudication; and (B) move to withdraw Hayes's plea due to the State's breach of the plea agreement. ECF No. 22 at 30–34. The respondents argue the State did not breach the GPA. ECF No. 90 at 22–28.

1.    **State Court Determinations**

The NCA determined Hayes did not demonstrate trial counsel was ineffective for failing to assert Hayes was not eligible for a habitual criminal sentence or by failing to move to withdraw the plea:

> [H]ayes claimed counsel was ineffective for failing to assert he was not eligible for sentencing under the habitual criminal enhancement as his two Texas convictions should not have been considered felonies for sentencing purposes because he did not serve prison terms for those convictions. Hayes also appeared to assert that his prior felony convictions should have only been considered as a single prior conviction for enhancement purposes because they arose out of one event.

> The State provided the sentencing court with two judgments of conviction from the state of Texas demonstrating that Hayes was convicted of two separate felony convictions in that state and sentenced to serve two years in prison for each conviction. *See* NRS 207.016(5) ("For the purposes of NRS 207.010, 207.012 and 207.014, a certified copy of a felony conviction is prima facie evidence of conviction of a prior felony."). Because Hayes had at least two prior convictions "which under the laws of the situs of the crime" were felonies, he was eligible to be sentenced pursuant to the small habitual criminal enhancement. 2009 Nev. Stat., ch. 156, § 1, at 567 (NRS 207.010(1)(a)). In addition, the State filed two separate judgments of conviction from Texas containing different criminal case numbers for each conviction. Hayes thus did not demonstrate the Texas convictions were prosecuted in the same indictment or information. Therefore, Hayes did not demonstrate his prior convictions should have been considered as a single prior conviction for purposes of enhancing his sentence pursuant to the habitual criminal statute. *See Rezin v. State*, 95 Nev. 461, 462, 596

P.2d 226, 227 (1979) ("[W]here two or more convictions grow out
of the same act, transaction or occurrence, and are prosecuted in
the same indictment or information, those several convictions may
be utilized only as a single 'prior conviction' for purposes of
applying the habitual criminal statute.").  Accordingly, Hayes did
not demonstrate that his counsel's performance fell below an
objective standard of reasonableness by failing to raise Hayes'
underlying arguments or a reasonable probability of a different
outcome had counsel done so.  Therefore, we conclude the district
court did not err by denying this claim.

[H]ayes claimed counsel was ineffective for failing to move
to withdraw his plea after it became clear he would not receive a
sentence in accordance with the plea agreement.  In the plea
agreement, the State agreed not to oppose probation in exchange
for Hayes' *Alford* plea.  However, the written plea agreement also
contained the FTA clause and explained the potential
consequences Hayes faced if he violated that clause, including a
sentence pursuant to the habitual criminal enhancement.
Accordingly, Hayes' sentence pursuant to the habitual criminal
enhancement was in accordance with Hayes' plea agreement.
Thus, Hayes did not demonstrate that his counsel's performance
fell below an objective standard of reasonableness by failing to
assert that Hayes should be permitted to withdraw his plea or a
reasonable probability of a different outcome had counsel done so.
Therefore, we conclude the district court did not err by denying
this claim.

ECF No. 59-2 at 5–7.  *See also supra* at 16–17.

### 2.    Analysis of Ground 5(A)

The NCA's determination that trial counsel was not ineffective for failing to investigate

Hayes's prior convictions and challenge the habitual criminal sentence is neither contrary to nor

constitutes an unreasonable application of clearly established federal law as determined by the

Supreme Court and is not based on an unreasonable determination of fact considering the

evidence presented during the state court proceedings.

At the outset of the sentencing hearing, Hayes argued his two Texas state-jail felonies

could not be considered for a sentence as a habitual criminal because they were not felonies and

30

should be considered one felony, not two.  He argued the 2017 Nevada conviction for a 2016

burglary could not be considered because the crime postdated the Excalibur crime in 2013.

Because Hayes made these arguments, it was objectively reasonable for the NCA to determine

counsel's failure to do so did not fall below an objective standard of reasonableness under the

totality of the circumstances.  And, as discussed in Ground 1, there is no merit to Hayes's claim

that the State failed to submit notice and evidence of two prior felony convictions for purposes of

imposing a habitual criminal sentence under Nevada law. *See supra* at pp. 18–21.  Accordingly,

Hayes fails to establish that but for trial counsel's failure to challenge the prior convictions, there

is a reasonable probability the result of the sentencing proceeding would have been different.

Hayes claims trial counsel was ineffective for failing to investigate and obtain the court

records for the prior convictions to substantiate Hayes's arguments about his prior felonies. ECF

No. 23-1; 23-2.  As discussed in Ground 1, the court records for the prior convictions support the

conclusion that the 2007 Texas conviction and 2011 Nevada conviction constitute felonies under

Nevada law. *See supra* at pp. 3, n.3, 18–21.  Thus, Hayes fails to establish counsel's failure to

investigate and present such documents fell below an objective standard of reasonableness or a

reasonable probability the result of the proceeding would have been different but for counsel's

failure to do so.

Hayes alleges trial counsel was ineffective for failing to argue Hayes's prior convictions

are nonviolent and remote in time. ECF No. 22 at 32 (citing *Clark v. State,* 109 Nev. 426, 851

P.2d 426 (1993) (holding it may be an abuse of discretion for the court to enter a habitual

criminal adjudication when the convictions used to support the adjudication are nonviolent and

remote in time). *See also Sessions v. State,* 106 Nev. 186, 190–91, 789 P.2d 1242, 1244–45

(1990) (reversing conviction for trafficking in marijuana because sentencing court abused its

1   discretion when it imposed a habitual criminal sentence based on defendant's felony convictions

2   in 1959 for theft of property valued at over fifty dollars, 1963 grand theft, and 1965 escape

3   without the use of force).  "NRS 207.010 makes no special allowance for non-violent crimes or

4   for the remoteness of convictions; instead, these are considerations within the discretion of the

5   district court." *See supra* at p. 17 (citing *Arajakis v. State,* 108 Nev. 976, 983, 843 P.2d 800, 805

6   (1992)).  An objectively reasonable trial attorney would conclude that arguing these points at

7   Hayes's sentencing hearing was futile.  Unlike in *Sessions*, where the convictions were decades

8   old, Hayes's crime occurred in 2013, while his prior convictions were in 2007 and 2011.  And

9   Hayes's sentencing court was aware the prior convictions were nonviolent, i.e., for credit card

10  abuse and attempt possession of credit or debit card without cardholder's consent.

11         Hayes alleges trial counsel was ineffective for failing to demand the sentencing court

12  exercise discretion in consideration of the habitual criminal sentence, and failure to do so caused

13  the sentencing court to impose a habitual criminal sentence based on the number of prior felony

14  convictions without an individualized finding it was just and proper to adjudicate Hayes a

15  habitual criminal. ECF No. 94 at 36–38.[10]  Nevada does not require "particularized findings" that

16  it is "just and proper" to adjudicate a defendant a habitual criminal. *See Hughes v. State*, 116

17  Nev. 327, 333, 996 P.2d 890, 893 (2000)).  "As long as the record as a whole indicates that the

18  sentencing court was not operating under a misconception of the law regarding the discretionary

19  nature of a habitual criminal adjudication and that the court exercised its discretion, the

20  sentencing court has met its obligation under Nevada law." *Id. at* 893–94 (finding no due process

21

22  [10] The Supreme Court of Nevada relatedly rejected Hayes's claim that the sentence should be
    modified or corrected because the trial court based the habitual criminal adjudication solely on
23  the prior felony convictions without individualized findings because the claim was outside the
    scope of claims permitted in a motion to correct an illegal sentence and did not challenge the
    facial legality of the sentence. ECF No. 75-2 at 3.

1    violation where court reviewed relevant documents and stated, "the defendant is a habitual

2    criminal," as circumstances and comments show court understood it had discretion whether to

3    adjudicate defendant a habitual criminal and exercised that discretion).

4         Here, it is reasonable to conclude trial counsel was not ineffective for failing to demand

5    the sentencing court state that it made a discretionary determination the habitual criminal

6    sentence was just and proper.  The circumstances show the parties made arguments directed to

7    the sentencing court's discretion and defense counsel argued, if the court chose to adjudicate

8    Hayes a habitual criminal, it should impose a lesser sentence.  Moreover, the sentencing court's

9    remarks do not suggest it operated under a misconception of the law regarding the discretionary

10    nature of a habitual criminal adjudication, and the court indicated it exercised its discretion when

11    it stated, "Mr. Hayes, I do believe that the State has satisfied any obligations statutorily under

12    207.010 to support their claim for habitual treatment . . . and you are going to be treated as a—

13    under the small habitual 207.010(a)." *Id.* at 19.  It is thus reasonable to conclude counsel's failure

14    to argue the prior convictions do not "automatically equate to habitual criminal status" did not

15    constitute deficient performance and there is no reasonable probability the result of the

16    proceeding would have been different had counsel done so.

17         Hayes contends counsel was ineffective for failing to object to the prosecutor's reference

18    at sentencing to the Mirage case and to a 2011 incident where Hayes allegedly went into a

19    convenience store and stole from a tip jar. ECF No. 49-23 at 9–11.  A sentencing court may rely

20    upon "any reliable and relevant evidence" that is not impalpable or highly suspect. NRS

21    § 176.015(6); *Silks v. State,* 92 Nev. 91, 545 P.2d 1159, 1161 (1976) (concluding a sentence

22    must fall within the parameters of relevant sentencing statutes and the record must demonstrate

23    the trial court did not consider "information or accusations founded on facts supported only by

impalpable or highly suspect evidence."). Here, the FTA clause gave the State an unqualified right to argue for any legal sentence, and the sentence that was imposed was within the parameters authorized by the GPA and relevant statutes. Hayes fails to establish the sentencing court relied upon either the Mirage charges or the 2011 incident (or that either is based on unreliable, irrelevant, or impalpable or highly suspect evidence) in determining whether to impose the habitual criminal adjudication and sentence. Thus, it is reasonable to conclude trial counsel's performance was neither deficient nor prejudicial.

Ground 5(A) is denied because Hayes has not demonstrated the state court's determinations are objectively unreasonable.

### 3.    Analysis of Ground 5(B)

Hayes alleges trial counsel had no reasonable strategic reason for failing to move to withdraw Hayes's plea based on the State's breach of the GPA. He claims the State breached the GPA by contravening the requirement in the GPA that it could argue for any "legal" sentence when the State argued for imposition of a habitual criminal adjudication based on the unnoticed Texas fraud conviction, the 2017 Nevada conviction, and arguing for imposition of a sentence based on the Mirage case and the 2011 bad act involving Hayes's alleged theft from a convenience store tip jar. ECF No. 22 at 33–34. The respondents contend the State did not breach the plea agreement because the State was allowed to "argue" for a habitual criminal sentence and presenting losing argument did not constitute a breach of the plea agreement.

In Nevada, "[a] motion to withdraw a plea of guilty, guilty but mentally ill or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended," and a court may set aside the judgment of conviction and permit the defendant to withdraw the plea "[t]o correct manifest injustice." NRS § 176.165.

1    The NCA determined trial counsel's failure to move to withdraw the plea was not

2   ineffective assistance:

> In the plea agreement, the State agreed not to oppose probation in
> exchange for Hayes' *Alford* plea. However, the written plea
> agreement also contained the FTA clause and explained the
> potential consequences Hayes faced if he violated that clause,
> including a sentence pursuant to the habitual criminal
> enhancement. Accordingly, Hayes' sentence pursuant to the
> habitual criminal enhancement was in accordance with Hayes' plea
> agreement. Thus, Hayes did not demonstrate that his counsel's
> performance fell below an objective standard of reasonableness by
> failing to assert that Hayes should be permitted to withdraw his
> plea or a reasonable probability of a different outcome had counsel
> done so. Therefore, we conclude the district court did not err by
> denying this claim.

10  ECF No. 59-2 at 5. The NCA's determination is neither contrary to nor constitutes an

11  unreasonable application of clearly established federal law and is not based on an unreasonable

12  determination of fact.

13    Although the State presented the sentencing court with two prior convictions that would

14  not authorize the sentencing court's consideration of a habitual criminal sentence, the State's

15  presentation of evidence of those prior convictions does not constitute a breach of the GPA.

16  Hayes's conduct, together with the FTA clause, granted the State an "unqualified" right to argue

17  for any legal sentence, and the presentation of prior convictions, even if they did not authorize

18  consideration of a habitual criminal punishment, could be considered by the court in exercising

19  its discretion at sentencing. *See* NRS § 176.015(6). *See also Silks*, 92 Nev. at 93–94, 545 P.2d at

20  1161 (concluding a sentence must fall within the parameters of relevant sentencing statutes and

21  that a sentencing court "[i]s privileged to consider facts and circumstances which clearly would

22  not be admissible at trial."); *Sheriff v. Morfin,* 107 Nev. 557, 560, 816 P.2d 453, 455 (1991)

23  (explaining that "[o]ther criminal conduct may properly be considered at the sentencing hearing,

even though the defendant was never charged or convicted of it."). "While a sentencing court may not punish a defendant for [uncharged crimes], it may consider them "for the purpose of gaining a fuller assessment of the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Denson v. State,* 112 Nev. 489, 494, 915 P.2d 284, 287 (1996) (quoting *Williams v. People of N.Y.*, 337 U.S. 241, 244 (1949)).  The record confirms the State did not breach the plea agreement and that the sentence complied with the GPA and relevant statutes.

Ground 5(B) is denied because it was reasonable to conclude trial counsel's failure to move to withdraw the plea did not fall below an objective standard of reasonableness under the circumstances and there is no reasonable probability such a motion would succeed.

### D.    Ground 6—Appellate IAC—Challenge Habitual Criminal Notice

In the remaining portion of Ground 6,[11] Hayes alleges appellate counsel was ineffective for failing to challenge the State's failure to give him reasonable notice and opportunity to be heard regarding the Texas fraud conviction, which the State alleged in its initial notice of intent to seek habitual criminal sentence, but not in the amended notice, and that was submitted at the sentencing hearing. ECF No. 22 at 34–36.  The respondents contend that Hayes received reasonable notice and an opportunity to be heard regarding the prior convictions and habitual criminal adjudication. ECF No. 90 at 28–29.

The NCA determined appellate counsel was not ineffective because the State properly noticed the habitual criminal enhancement:

> The State filed a notice of its intent as required by NRS 207.016(2) to request the sentencing court to sentence Hayes pursuant to the habitual criminal enhancement, and did so prior to entry of Hayes' *Alford* plea.  Hayes failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness by failing to argue the State did not properly file the notice or a

---

[11] ECF No. 82 at 7–9, 11.

1    reasonable likelihood of success on appeal had counsel done so.
     Therefore, we conclude the district court did not err by denying
2    this claim.

3    ECF No. 59-2 at 8.  The NCA's determination is neither contrary to nor constitutes an

4    unreasonable application of clearly established federal law as determined by the Supreme Court

5    and is not based on an unreasonable determination of fact based on the state court proceedings.

6         I defer to the NCA's determination that the amended notice of intent to seek habitual

7    criminal sentence satisfies state law requirements. *Bradshaw*, 546 U.S. at 76.  It is true that the

8    amended notice omitted the Texas fraud conviction, and the State nonetheless submitted at the

9    sentencing hearing a certified copy of the corresponding judgment of conviction for that crime.

10   However, it is reasonable to conclude appellate counsel's failure to challenge the notice of the

11   conviction did not fall below an objective standard of reasonableness.  The State properly

12   noticed—in the amended notice—three other prior felonies that were submitted to the sentencing

13   court.  And as discussed in Ground 1, two of those three prior felony convictions could legally

14   authorize consideration and imposition of a habitual criminal sentence. *See supra* at pp. 18–21.

15   Consequently, it is objectively reasonable to conclude appellate counsel's failure to challenge the

16   procedure was neither deficient nor prejudicial as, under the circumstances, there was no

17   reasonable probability the result of the appeal would have been different had appellate counsel

18   done so.  Ground 6 is denied.

19   **IV.    CERTIFICATE OF APPEALABILITY**

20        This is a final order adverse to Hayes.  As such, Rule 11 of the Rules Governing Section

21   2254 Cases requires me to issue or deny a certificate of appealability (COA).  I have *sua*

22   *sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28

23   U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).

1    A COA may issue only when the petitioner "has made a substantial showing of the denial

2 of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits,

3 a petitioner "must demonstrate that reasonable jurists would find the district court's assessment

4 of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

5 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a

6 COA will issue only if reasonable jurists could debate (1) whether the petition states a valid

7 claim of the denial of a constitutional right and (2) whether the court's procedural ruling was

8 correct. *Id*.  None of my rulings meets the *Slack* standard so I decline to issue a COA.

9 **V.    CONCLUSION**

10    I THEREFORE ORDER that Petitioner James H. Hayes's Petition for Writ of Habeas

11 Corpus under 28 U.S.C. § 2254 (ECF No. 22) **is denied**.

12    I FURTHER ORDER that all requests for an evidentiary hearing **are denied**.

13    I FURTHER ORDER that a certificate of appealability **is denied**.

14    I FURTHER ORDER the Clerk of Court to enter judgment accordingly and close this

15 case.

16    Dated: October 13, 2025.

17
_____

18
Andrew P. Gordon
Chief United States District Judge

19

20

21

22

23